## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Action No.: 16-0000

| | |
|---|---|
| AT, by his next friend and parent HT,<br><br>     Plaintiff,<br><br>v.<br><br>UNIVERSITY OF NORTH CAROLINA; BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA; W. LOUIS BISSETTE, JR., in his official capacity as Chairman of the Board of Governors of the University of North Carolina; NORTH CAROLINA SCHOOL OF SCIENCE AND MATHEMATICS; BOARD OF TRUSTEES OF THE NORTH CAROLINA SCHOOL OF SCIENCE AND MATHEMATICS; and THOMAS J. WILLIAMS, in his official capacity as Chairman of The Board of Trustees of the North Carolina School of Science and Mathematics,<br><br>     Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.  This lawsuit challenges as unconstitutional, under both the United States and North Carolina Constitutions, the policy and practice of the North Carolina School of Science and Math, North Carolina School of Science and Mathematics Board of Trustees University of North Carolina, and University of North Carolina Board of Governors (hereinafter "Defendants"), refusing to review the application for admission submitted by AT, a high achieving immigrant high school student whom the federal government has

authorized to live and work in the United States under the Deferred Action for Childhood Arrivals ("DACA") program.

2. Defendants' refusal to review AT's application for admission is based on their policy and practice of considering as ineligible for admission otherwise qualified applicants identified as DACA recipients.

3. Defendants' policy and practice regarding the admissions eligibility of Plaintiff AT and all otherwise qualified high school DACA recipients is in turn based on a substantial misinterpretation of the requirements and applicability of North Carolina and federal law, and is preempted by federal immigration authority.

4. Under N.C. Gen. Stat. §116-235, an otherwise qualified North Carolina high school student seeking admission to NCSSM must be a "legal resident" of the State.

5. To be classified as a "legal resident" for purposes of admission to NCSSM, a student must first demonstrate that he or she has "established legal residence (domicile) in North Carolina." N.C. Gen. Stat. §116-143.1(a)(1).

6. Although the NCSSM has an administrative appeal process for student applicants seeking an appeal of the academic merits of their application, upon information and belief, there is no right of administrative appeal in this situation where the NCSSM has refused to review AT's application, based solely on his being a DACA recipient, and not based on the academic merit of his application.

7. Plaintiff AT now asks this Court to declare that that Defendants' policy and practice of refusing to review his application to NCSSM, as an otherwise eligible student with DACA classification, violates the Supremacy Clause and the Equal Protection

Clause of the United States Constitution and Article I, §19 of the North Carolina State Constitution, the Equal Protection Clause. Plaintiff AT further requests that this Court enjoin Defendants from denying consideration, proper processing and review of his application for admission and to enroll him in the 2016 entering 11th grade class, should he meet NCSSM's academic and other non-academic qualifications.

## JURISDICTION AND VENUE

8. Plaintiffs bring this action under the Constitution and laws of the United States, and under 42 U.S.C. § 1983, and under the North Carolina Constitution.

9. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the Plaintiff's federal constitutional claims. Supplemental jurisdiction is proper under 28 U.S.C. § 1367(a).

10. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

11. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

**Plaintiff**

12. Plaintiff AT is a high achieving immigrant student lawfully present in North Carolina. He is in the 10th grade at a high school in Durham County, North Carolina, where he has a 9th and 10th grade cumulative, weighted GPA higher than 4.0 and is currently first in his 10th grade class of students. AT and his family abandoned their home in Mexico and subsequently moved to North Carolina in 2002 for a better life, when AT

-3-

was only one (1) year old. Plaintiff AT has had to overcome many obstacles and worked diligently in order to succeed in school, to help his family, and to enrich his community.

13. Plaintiff AT plans to attend college where he hopes to obtain a degree in mechanical engineering. AT wishes to attend the NCSSM in order to experience the academic rigor and challenge that AT believes will best prepare him for college.

14. In October 2015, AT was granted deferred action under the Deferred Action for Childhood Arrivals (DACA) program by the United States government. That DACA approval is renewable and in October 2017, AT will be able to apply to continue his grant of deferred action under DACA for another two-year period.

**Defendants**

15. Defendant University of North Carolina is a public educational institution receiving federal financial assistance. Defendant University of North Carolina includes the North Carolina High School of Science and Mathematics as one of its constituent institutions.

16. Defendant Board of Governors of the University of North Carolina ("the Board") is a corporate body charged with the general control, supervision, and governance of the University of North Carolina's constituent institutions. The Board is capable of being sued in "all courts whatsoever" pursuant to N.C. Gen. Stat. § 116-3.

17. Defendant W. Louis Bissette, Jr. ("Defendant Bissette" or "Mr. Bissette") is sued in his official capacity as the Chairman of the Board of Governors of the University

-4-

of North Carolina and has the power to ensure the Board's compliance with any injunctive relief.

18. Defendant North Carolina School of Science and Math is a two-year public residential high school located in Durham, North Carolina. It enrolls rising 11th graders through a competitive admission process. It is a constituent institution of the University of North Carolina.

19. Defendant Board of Trustees of the North Carolina School of Science and Mathematics (the "BOT") is a corporate body charged with the general control, supervision, and governance of the NCSSM, including its admissions policies and process. The BOT is capable of being sued in "all courts whatsoever" pursuant to N.C. Gen. Stat. §§ 116-3 and 116-235.

20. Defendant Thomas J. Williams ("Defendant Williams" or "Mr. Williams") is sued in his official capacity as the Chairman of the Board of Trustees of the North Carolina School of Science and Mathematics and has the power to ensure the Board's compliance with any injunctive relief.

21. Defendants, through their respective duties and obligations, are responsible for enforcing the policy of excluding DACA students from admission to the NCSSM. Each Defendant, and those subject to their direction, supervision, or control, has or intentionally will perform, participate in, aid and/or abet in some manner the acts alleged in this complaint, has or will proximately cause the harm alleged herein, and has or will continue to injure Plaintiff irreparably if not enjoined. Accordingly, the relief requested

herein is sought against each Defendant, as well as all persons under their supervision, direction, or control, including, but not limited to, their officers, employees, and agents.

## BACKGROUND AND STATEMENT OF FACTS

### A. Plaintiff AT's Application to NCSSM

22. AT timely applied in the fall of 2015 for admissions to the August 2016 entering 11th grade class at NCSSM, an elite public high school that is formally part of the UNC system and not part of the Durham Public School system.

23. NCSSM is a two-year residential program for 11th and 12th grade students in North Carolina. The entire NCSSM program is free, and no tuition or other costs are assessed upon enrolled students. There are a limited number of students enrolled each year, and admission is based on a competitive review of each applicant's academic merit, as well as other non-academic factors.

24. A student can apply for admission to either the NCSSM's residential program or non-residential on-line program, or both. AT applied for admission to both NCSSM programs.

25. Upon information and belief, the NCSSM initially kept AT in its pool of applicants and did not reject him or review the merits of his application, pending receipt of an advisory opinion from the N.C. Department of Justice regarding whether DACA students fit within the definition of "legal resident" under N.C. Gen. Stat. §§116-235 and 116-143.1(a) for admissions purposes.

26. On March 24, 2016, the North Carolina Department of Justice provided

NCSSM with an Advisory Opinion which stated, in pertinent part:

> Given that deferred status pursuant to DACA only defers prosecution and
> deportation for, at best, two years, a DACA recipient cannot have the
> necessary intent to remain in North Carolina permanently or for an
> unlimited or indefinite period of time in order to be considered a
> "domiciliary of North Carolina" pursuant to N.C. Gen. Stat. §116-
> 143.1(a)(1). As a result, based on the statutes N.C. Gen. Stat. §116-
> 235(b)(1) and §116-143.1(a)(1), DACA recipients would not be eligible for
> admission to, and enrollment at, NCSSM.

27. By letter dated March 30, 2016, NCSSM informed AT that, having received

confirmation of its DACA student ineligibility policy from the North Carolina

Department of Justice, NCSSM believed that it "cannot consider" Plaintiff AT's

"application for admission to NCSSM," based solely on the fact that AT is a DACA

recipient. (See NCSSM March 30, 2016 refusal letter (redacted), attached and

incorporated herein as Exhibit A.)

## B. Deferred Action

28. Deferred action is a longstanding form of prosecutorial discretion in which the

federal government decides, based on humanitarian or other reasons, to refrain from

seeking an individual noncitizen's removal, and to authorize his or her continued

presence in the United States. A grant of deferred action indicates that the noncitizen's

presence in the United States is known to the federal government, and that the federal

government has made a discretionary determination, based on a review of the individual's

case, not to remove the noncitizen, but rather to allow him or her to remain in the United States during a specified period.

29. Recipients of deferred action are eligible to receive employment authorization under federal law upon a showing of economic necessity. *See* 8 C.F.R. § 274a.12(c)(14).

30. The Secretary of Homeland Security's authority to grant deferred action to otherwise removable noncitizens derives from her statutory authority over "administration and enforcement" of the Immigration and Nationality Act ("INA"), including the power to "perform such . . . acts as [s]he deems necessary for carrying out [her] authority." 8 U.S.C. §§ 1103(a)(1), 1103(a)(3). That discretion granted by Congress includes the discretion to "decide whether it makes sense to pursue removal at all." *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012). Deferred action is simply one example of the federal government's exercise of the discretionary authority granted by Congress in immigration matters. Indeed, Congress repeatedly has recognized in the INA and other legislation that the Executive Branch has discretion to grant deferred action under the immigration laws.

31. For four decades, the federal government has used deferred action to authorize a wide range of different groups of immigrants to live and work in the United States for a temporary period. Deferred action has been made available to victims of human trafficking and sexual exploitation; to relatives of victims of terrorism; to surviving family members of a lawful permanent resident member of the armed forces; to spouses and children of U.S. citizens or lawful permanent residents who are survivors of domestic violence; to surviving spouses of U.S. citizens; to foreign students affected by Hurricane

-8-

Katrina; and to applicants for certain types of visas. In addition, federal immigration authorities may grant deferred action on an individual basis, including, for example, to a person whose continued presence is desired by law enforcement for an ongoing investigation. Thus, AT, who was brought to the country while only one year of age, is only one of the most recent beneficiaries of deferred action under federal immigration law.

**C. Development of the Deferred Action for Childhood Arrivals Program**

32. On June 15, 2012, the Secretary of the United States Department of Homeland Security ("DHS") announced a new program of administrative immigration relief for young immigrants who came to the United States as children. The DACA program was established to allow these young immigrants to remain in the United States without fear of deportation for a specified, renewable period, and thus continue to contribute to American society.

33. By establishing DACA, the federal government created a program under which youth who meet specific criteria, such as having resided in the U.S. continuously for at least five years (since June 2007), earning a high school diploma or being enrolled in school, and passing a rigorous criminal background check, can be granted deferred action. Persons granted deferred action under DACA may stay in the United States for a renewable period of two years, are shielded from removal proceedings during that time, and are generally eligible for federal employment authorization and a Social Security Number.

34. As the President of the United States has recognized, these young immigrants "are Americans in their heart, in their minds, in every single way but one: on paper."[1] He explained, "it makes no sense" to deport "[t]hese . . . young people who study in our schools,…play in our neighborhoods, [a]re friends with our kids, [and] pledge allegiance to our flag."[2] He explained, these individuals are "talented young people, who, for all intents and purposes, are Americans—they've been raised as Americans, understand themselves to be part of this country." The DACA program is intended "to lift the shadow of deportation from these young people" and "to mend our Nation's immigration policy to make it more fair, more efficient, and more just."[3]

35. The rationale for the DACA program is consistent with the federal government's longstanding use of deferred action to permit certain noncitizens to remain in the country. In announcing the DACA program, the DHS Secretary explained that "[o]ur Nation's immigration laws . . . are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways."[4]

36. Under DACA, young immigrants who entered the United States as children and who meet educational and residency requirements may apply for deferred action.

---

[1] President Barack Obama, *Remarks on Immigration Reform and an Exchange with Reporters*, 2012 DAILY COMP. PRES. DOC. 1 (June 15, 2012), *available at* http://www.gpo.gov/fdsys/pkg/DCPD-201200483/pdf/DCPD-201200483.pdf.
[2] *Id.*
[3] *Id.*
[4] *Id.*

Noncitizens are eligible for DACA if they: a) were under the age of 31 as of June 15, 2012; b) came to the United States before reaching their 16th birthday; c) have continuously resided in the United States since June 15, 2007, up to the present time; d) were physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action with United States Citizenship and Immigration Services ("USCIS"); e) entered without inspection before June 15, 2012, or had an expired lawful immigration status as of June 15, 2012; f) are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general educational development ("GED") certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and g) have not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.[5] The DACA application process includes extensive criminal background checks.[6]

37. The federal government routinely grants employment authorization to deferred action recipients, including DACA recipients. Noncitizens granted work authorization are issued federal employment authorization documents ("EADs"), such as I-766 cards.

**D. NCSSM Policy and Practice with Respect to Admission of Non-Citizen Students**

38. NCSSM has a formal policy of enrolling "only students who are legal residents of the State of North Carolina, as defined by N.C. Gen. Stat. 116-143.1…..by December

---

[5] USCIS, *Consideration of Deferred Action for Childhood Arrivals Process—Frequently Asked Questions* (June 15, 2015), *available at* https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-process/frequently-asked-questions
[6] *See* Id.

1st of the school year in which the student applies for admission (the tenth grade year) *and* who otherwise meet the admissions criteria of the School." (NCSSM Board of Trustees 7300, Residency).

39. NCSSM's admission policy is controlled by N.C. Gen. Stat. §116-235 (b) (1) which states that to be "considered for admission, an applicant must be"… "a legal resident of the State, as defined by N.C. Gen. Stat. 116-143.1(a)(1)…"  N.C. Gen. Stat. §116-143.1(a)(1) in turn defines North Carolina residency for purposes of admission (as opposed to residency "for tuition purposes," defined separately under N.C. Gen. Stat. §116-143.1(a)(2)) as follows:

> A "legal resident" or "resident" is a person who qualifies as a domiciliary of North Carolina; a "nonresident" is a person who does not qualify as a domiciliary of North Carolina.

40. Under  N.C. Gen. Stat. §116-143.1(a)(1)'s definition, a  high school student able to establish his or her domicile in North Carolina would fit within the definition of "legal resident" established for purposes of admission to NCSSM under N.C. Gen. Stat. §116-235 (b) (1).  Neither statute makes any mention of immigration status or category as a requirement to establish domicile or residence for admission purposes, other than include the term "legal resident."

41. Upon information and belief, Defendants' general classification of students by residence and interpretation of N.C. Gen. Stat. §116-143.1(a)(1) is based on the North

Carolina State Residence Classification Manual (hereinafter "the Manual"), promulgated, adopted and maintained by both UNC and NC Community College System/NCCCS.[7]

42. Defendants have refused to review AT's application for admission to the School because he is a DACA recipient, even though AT, as a DACA recipient, meets all of the statutory requirements to be within the definition of "legal resident" in accordance with N.C. Gen. Stat.§§ 116C-143.1(a)(1) and 116C-235.

43. Plaintiff AT abandoned his prior domicile and adopted North Carolina as his only true domicile, and he possesses the subjective intent to remain in North Carolina. Even though Plaintiff AT is able to submit the necessary documentation corroborating his intent to remain in the state, Defendants' existing policy and practice is to disregard the documentation and information AT, as a DACA student, is able to provide. Despite the existence of such documentation, Defendants have determined that Plaintiff AT, and DACA students as a group, do not have the legal capacity to establish their domicile and thus are not eligible for admission to NCSSM.

44. If Plaintiff AT were allowed by Defendants to establish his domicile via objective documentation, he would be able to provide NCSSM officials with sufficient documentation of his domicile in the state to meet the requirements in N.C. Gen. Stat. 116-§235(b)(1) and §116-143.1(a)(1), and be classified as a legal resident for NCSSM admission purposes.

---

[7] See https://www.northcarolina.edu/sites/default/files/documents/state_residence_classification_manual.pdf

45. Defendants' policy and practice determines a noncitizen student's eligibility for admission to NCSSM in substantial part based on federal immigration law regarding a noncitizen's legal capacity to establish their domicile in the United States. [8]

46. Upon information and belief, prior to the federal announcement of the DACA program, the policy and practice of the Defendants was to delineate each category of immigrant who could qualify for admission to NCSSM in accord with the list of approved categories noted in the state residence Manual.[9] Many different immigration classifications are listed, from some temporary visas to lawful permanent residence. Of note, the Manual lists students with an "approved I-360 and a pending application for adjustment of status" among those categories of noncitizen students to qualify for the in-state tuition rate. Such students with an approved I-360 but a not-yet-approved application for adjustment of status may have been granted deferred action, the same immigration relief that high school students granted Deferred Action for Childhood Arrivals have received.[10]

47. Defendants, however, have not clarified or changed their policy to allow DACA students to establish domicile in North Carolina, thus prohibiting all DACA

---

[8] See the Manual, Section IV(B)(4)("Non-U.S. Citizens"), p. 17-18.
[9] Id.
[10] See Kandel, William A., "Immigration Provisions of the Violence Against Women Act," Congressional Research services, May 15, 2012, p. 4, available at: https://www.fas.org/sgp/crs/misc/R42477.pdf ("If the I-360 petition is ultimately approved, the foreign national is granted deferred action status, a "quasi" status and administrative act that halts actions to remove the individual from the United States for a period of time. Foreign nationals with an approved I-360...may apply for work authorization until they are eligible to apply for lawful permanent residence."). See also U.S. Citizenship and Immigration Services, "Battered Spouse, Children, and Parents," available at: http://www.uscis.gov/humanitarian/battered-spouse-children-parents (Noting, "If you have an approved I-360 and have been placed in deferred action status, you are eligible to apply to work in the United States.") http://www.uscis.gov/humanitarian/battered-spouse-children-parents

students, including Plaintiff AT, from the opportunity of having the merits of their admission application reviewed for possible enrollment in NCSSM.

48. Defendants' policy creates an irrebuttable presumption that DACA grantees in North Carolina cannot establish their domicile in the state no matter what subjective intent they may have and no matter what objective corroborating documentation they can provide.

### E.  Other NC Determinations that DACA Students Are "Legal Residents" for Purposes of Admission

49. On February 18, 2013, Ms. Q. Shante Martin, General Counsel of the North Carolina Community College System, requested that the Office of the North Carolina Attorney General provide its legal opinion whether otherwise qualified DACA recipients were "lawfully present" and thus entitled as a "legal resident" to be admitted to community colleges in the same manner as all other lawfully present students under applicable North Carolina law.

50. On June 26, 2013, the North Carolina Department of Justice responded and instructed NCCCS that DACA recipients possess valid documentation under North Carolina law of their "legal presence" in the United States, and, thus, if otherwise qualified, are eligible to enroll in any NCCCS institution in the same manner as any other lawfully present student.   (See June 26, 2013 Advisory Opinion, attached as Exhibit B and incorporated herein.)

51. As a result of the Advisory Opinion from the North Carolina Department of Justice, on August 1, 2013, NCCCS General Counsel Martin issued to all community

college Presidents and other relevant officials "clarification on how individuals with DACA classification should be treated under the State Board's current 'Admissions to Colleges' policy." The August 1, 2013 NCCCS Memorandum instructed NCCCS officials that "**during the period of deferment, individuals who have been granted deferral under the DACA program do not meet the definition of an undocumented immigrant as it's defined in 1D SBCCC 400.2(b) because deferral recipients are lawfully present in the United States during the period of deferment**." (emphasis in original). (See August 1, 2013 Memorandum by General counsel Martin, attached as Exhibit C and incorporated herein.)

### F. Defendants' Policy Harms Plaintiff AT

52. Defendants' policy and practice of denying Plaintiff AT., as a DACA recipient, the ability to prove that he has established domicile in North Carolina, and thereby denying him the opportunity to have the merits of his application to NCSSM reviewed, creates an incalculable and ongoing academic harm to Plaintiff. Plaintiff's ability to have the merits of his application reviewed is extremely time-limited, given the short period prior to the mid-August start of the NCSSM school year, and his ability to attend the unique educational experience provided by NCSSM will likely be taken away forever if he is unable to have his application timely reviewed.

53. Further, Plaintiff is harmed by having an unconstitutional policy and practice enforced against him.

## G. Injunctive and Declaratory Relief Is Required to Prevent the Harm Plaintiff Will Suffer

54. The wrongful denial of the opportunity to have the merits of Plaintiff's application for admission reviewed causes irreparable harm, as described in paragraphs 52 and 53 above. Such harm is irreparable because no monetary compensation can fairly remedy the effects of being improperly denied the opportunity to be admitted to NCSSM and enrolled in the August 2016 entering 11th grade class.

55. Plaintiff has no plain, speedy, and adequate remedy at law against Defendants' decision to deny him the opportunity to have his admissions application reviewed solely because he is a DACA recipient.

56. Unless this Court grants injunctive and declaratory relief, Plaintiff will suffer irreparable injury and forever be denied the opportunity to be reviewed for academic eligibility for admissions to the NCSSM.

57. There is an actual and substantial controversy between Plaintiff AT and Defendants regarding whether an otherwise eligible DACA recipient has the legal capacity to establish his domicile in the state and whether he is entitled under existing state and federal law to have his application to NCSSM properly and formally reviewed for purposes of admission to the School.

## COUNT ONE:

### Defendants' Policy Violates the Supremacy Clause and Is Preempted (Supremacy Clause, Article VI, Clause 2, of the United States Constitution)

58. Plaintiff re-alleges and incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

59. The Supremacy Clause of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  United States Constitution, Article VI, clause 2.

60. Pursuant to the Supremacy Clause, federal law preempts state regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the federal government.  Any state law that conflicts or interferes with federal law is preempted.  Similarly, any state policy or practice that conflicts with federal governmental policy established pursuant to federal law or the United States Constitution is also preempted.

61. The federal government has sole and exclusive power to regulate immigration. The federal government's exclusive power over immigration matters is inherent in the nation's sovereignty, and derives from the U.S. Constitution's grant to the federal government of the power to "establish an uniform Rule of Naturalization," *id.*, art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," *id.*, art. I, § 8, cl. 3.

62. As part of its immigration power, the federal government has exclusive authority to enact and to enforce regulations concerning which noncitizens to admit, exclude, remove, or allow to remain in the United States. The federal government also has exclusive authority over the terms and conditions of a noncitizen's stay in the United States. Further, the federal government has exclusive authority to classify noncitizens, which includes determining the categories of noncitizens who are granted federal authorization to be present in the United States. In contrast, state governments have none of these powers.

63. Pursuant to its powers, the federal government has established a comprehensive system of laws, regulations, procedures, and administrative agencies that determine, subject to judicial review, whether and under what conditions a noncitizen may enter and live in the United States, when a noncitizen may be subject to removal, and when a noncitizen may be eligible for relief from removal, either temporarily or permanently. Included among those federal governmental powers is the authority to determine which non-citizens have the legal capacity to establish their domicile in the United States.

64. Under that system, Congress delegated to the federal Executive Branch broad discretion over the manner of the execution of the immigration laws, including the manner of their enforcement. That discretion includes the discretion to classify noncitizens regarding their capacity to establish their domicile.

65. One of the conditions that the federal government has the authority to set as part of the granting of any specific non-citizen classification is whether or not the

individual must affirmatively promise to return to his or her home country at the end of his or her authorized stay in the United States. The federal government has elected to make that a condition of certain nonimmigrants' authorized stay in the United States, and not others'.[11]

66. The federal government has chosen *not* to require Deferred Action noncitizens (including those granted deferred action under DACA) to make any statements of their intent to return to their former home countries after their period of authorized stay expires. Nor has the federal government required non-citizens granted deferred action to make any statements or show any proof regarding permanent ties to their former home countries. Rather, the U.S. government has actually required DACA applicants to affirmatively show ties *to the United States* – by proving they have lived in the United States for five years prior to application, and that they have completed school or are still attending school in the United States.

67. In addition, the federal government, through the United States Citizenship and Immigration Service (USCIS), in its "Frequently Asked Questions," updated June 15, 2015, addressed this specific issue and instructed that "Individuals granted deferred action are not precluded by federal law from establishing domicile in the U.S." [12]

68. Defendants' policy and practice, however, imposes an additional and insurmountable burden upon students with DACA classification not required by the

---

[11] See, e.g. 8 U.S.C. §1101(a)(15)(J)(allowing a "J" visa for "an alien *having a residence in a foreign country which he has no intention of abandoning* who is a bona fide student, scholar, trainee, teacher, [or] professor…, *who is coming temporarily to the United States*…")(emphasis added).
[12] See USCIS FAQs, June 15, 2015, accessed at https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-process/frequently-asked-questions

federal government: an irrebuttable presumption that the DACA student cannot establish domicile, regardless of subjective intent and objective documentation of that intent. Having decided to determine noncitizen's eligibility for admission based on federal immigration law and the federal documents issued to noncitizens lawfully present, North Carolina may not impose its own contrary policy and practice over which immigration classifications are able to establish domicile, and which cannot do so. Defendants, as state actors, do not have authority to classify noncitizens for purposes of their ability to establish domicile in such a way that is clearly contrary to the intent underlying the federal laws, regulations and policies governing immigration. Therefore, Defendants' policy of denying Plaintiff AT and all other DACA recipients the opportunity to have the merits of their application for admission reviewed, solely based on the erroneous notion that they cannot establish domicile, violates the Supremacy Clause of the United States Constitution and is preempted.

69. Defendants' policy and practice of denying the opportunity of reviewing the merits of an otherwise qualified DACA student's application is further preempted because it conflicts with, frustrates, and serves as an obstacle to federal immigration law, regulations, goals, and policies. It is contrary to the federal government's intent that it alone has discretion to determine the parameters of a noncitizen's authority to remain in the United States, and the declarations that a noncitizen must or must not make in order to support that legal authority to remain. Defendants' misclassification of DACA recipients directly and fundamentally conflicts with federal law and policy, in violation of the Supremacy Clause.

70. In sum, because Defendants' policy is preempted by federal law, it violates the Supremacy Clause and is unconstitutional.

## COUNT TWO:

### Defendants' Policy Violates Equal Protection
### (Fourteenth Amendment to the United States Constitution)

71. Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

72. The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

73. Defendants' policy of refusing to review the merits of the admission applications of DACA recipients constitutes impermissible discrimination against certain lawfully present noncitizens on the basis of alienage and deprives them of equal protection of the laws within the meaning of the Fourteenth Amendment to the United States Constitution.

74. Defendants' decision to refuse to review the merits of the admission applications of individuals granted deferred action under the DACA program, while granting such an application review and possible admission to other individuals granted deferred action or other forms of temporary authorization to remain in the United States, does not further any legitimate state goal. Because the Defendants' differential treatment of DACA recipients has no valid justification, or even a rational basis, it violates the Equal Protection Clause of the Fourteenth Amendment.

## COUNT THREE

### Defendants' Policy Violates the Law of the Land
### (Art. I, Section 19 of the North Carolina Constitution)

75. Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

76. The Law of the Land Clause of the North Carolina Constitution provides that "[n]o person shall be denied the equal protection of laws . . ."

77. Defendants' policy of refusing to review the merits of the admission applications of DACA recipients constitutes impermissible discrimination against certain lawfully present noncitizens on the basis of alienage and deprives them of equal protection of the laws within the meaning of Art. I, § 19 of the North Carolina Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants' policy and practice of refusing to review the merits of AT's admission application as well as the admission applications of all other Deferred Action for Childhood Arrivals grantees is unlawful and invalid because it is preempted by the Supremacy Clause of the United States Constitution.

B. A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants' policy and practice of refusing to review the merits of AT's admission application as well as the admission applications of all other Deferred Action for Childhood

Arrivals grantees is unlawful and invalid because it violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

C. A preliminary and permanent injunction under Counts One and Two enjoining Defendants, their respective officials, agents, employees, assigns, and all persons acting in concert or participating with them from implementing or enforcing the unconstitutional policy and practice of refusing to review the merits of AT's admission application as well as the admission applications of all other Deferred Action for Childhood Arrivals grantees who are otherwise qualified.

D. An order awarding Plaintiff's costs of suit, and reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law.

E. An order awarding Plaintiff nominal damages for the violation of his constitutional rights.

F. Such other and further relief as the Court deems equitable, just, and proper.

This the 18th day of May, 2016.

Respectfully submitted,

BY: /s/ Jack Holtzman
Jack Holtzman
NC State Bar No. 13548
N.C. JUSTICE CENTER
224 South Dawson Street
P.O. Box 28068
Raleigh, North Carolina 27611
Telephone: (919) 856-2165
Facsimile: (919) 856-2175
Email: jack@ncjustice.org

Karen C. Tumlin*
CA State Bar No. 234691
Nicholas Espíritu*
CA State Bar No. 237665
Alvaro M. Huerta*
CA State Bar No. 274787
National Immigration Law Center
3435 Wilshire Blvd. Suite 1600
Los Angeles, CA 90010
Telephone: (213) 674-2815
Email: tumlin@nilc.org
        espiritu@nilc.org
        huerta@nilc.org


Tanya Broder*
CA State Bar No. 136141
National Immigration Law Center
405 14th Street, Suite 401
Oakland, CA 94612
Telephone: (510) 663-8282
Email: broder@nilc.org

* Notice of special appearance pursuant to L.R. 83-1(d) pending